**In re The REVENUE PROPERTIES CO., LTD. LITIGATION CASES.**

"MDL–Docket No. 32"
MDL No. 32–5, 32–10, 32–15 to 32–18.

United States District Court,
D. Massachusetts.

Jan. 21, 1974.

## MEMORANDUM AND ORDER

CAFFREY, Chief Judge.

This matter came before the Court upon the basis of an application by the Special Master in the above-entitled matter for an order approving and confirming the Special Master's rulings concerning the claim of Philip Baskin and for an order concerning the Hartwell & Campbell Leverage Fund. The Special Master also seeks herein an order authorizing him to make immediate distribution of the Fund to each claimant in an amount as determined by the Special Master by application of the formula previously approved herein by this

Court and for an order approving the payment of compensation to the Special Master, and the payment of the expenses of administration of this Fund.

(1) Upon consideration of the application of the Special Master and his findings relative to the claim of Hartwell & Campbell Leverage Fund, the Special Master's disallowance of said claim as spelled out in paragraph 9 of the application of the Special Master is approved and confirmed.

(2) Upon consideration of the ruling of the Special Master on the claim of Philip Baskin, denying same, as set out in paragraph 8 of the application of the Special Master, the Special Master's ruling denying such claim is approved and confirmed herein.

(3) The application for disbursements by the Special Master is for compensation for his services in the total amount of $75,000, plus administrative expenses primarily to be paid to the Special Master's agent, The National Shawmut Bank of Boston, in the amount of $41,989.00.

In passing on these applications it should be noted that the Special Master was appointed by the Court to administer a fund for the benefit of class members which was in the amount of $2,-445,085 when turned over to the Special Master. During the period in which it was being administered, the fund was invested by the Special Master in United States Treasury Bills and also in Certificates of Deposit of a National Bank, which investment caused the fund to grow to a gross amount of approximately $2,638,000 as of this date.

The Special Master's report indicates that, pursuant to the notices sent to the potential class members, he received in excess of 6100 applications by shareholders desirous of participating in the distribution of this fund; that the Special Master examined and made a ruling on each of these applications, ultimately allowing some 4200 of them and rejecting approximately 615 on the merits. He rejected some 200 because of late filing, and some 200 who were shown to have no entitlement upon application of the Court-approved formula. Some 130 were rejected for failure to supply required documentation, and an additional 300 applications were ultimately denied because the claimant proved to be unreachable at the address forwarded with the claim.

It should be noted herein that the interest earned during the administration of the fund provides a source from which it is possible to pay the entire amount sought as compensation by the Special Master, plus the entire amount of expenses incurred for his agent, and for other expenses such as mailing and publishing. In fact after the allowance of the expenses sought there will remain in the fund available for distribution to the class members in excess of $70,000 more than the amount of the fund at the time it was turned over to the Special Master.

In passing on the reasonableness of these requests, I judicially notice that in the last prior distribution of a fund in this court in the case of Cherner, et al. v. Transitron Electronic Corp. et al., there were 50,000 applications to share in a fund of about $4,560,000. The Special Master appointed therein was compensated in the amount of approximately $136,500 for his services and Keydata, the agent employed by that Special Master to perform substantially the same function as performed herein by the National Shawmut Bank, was compensated in the amount of $697,339. By way of contrast the records of this case indicate that the Special Master handling this matter, in order to keep down the cost of administration, solicited what were, in effect, bids to do the necessary administrative, clerical and computer work from New England Merchants Bank, Keydata Corp., State Street Bank & Trust Company and The National Shawmut Bank. The proposals submitted by these four firms clearly established that employment of The Na-

tional Shawmut Bank would cost substantially less than the use of any of the other three financial institutions, and that had the Special Master herein used any one of the other three, the cost, depending on the volume of claims, would have exceeded that of the Shawmut Bank by multiples which range from a high of 12.5 to a low of four times the cost of the Shawmut's services.

■ In passing on the reasonableness of the request of the Special Master for compensation, the Court has in mind its obligation to protect the interests of the class members, as well as its obligation to award fair and adequate compensation to the Special Master for his discharge of an arduous task carrying heavy financial responsibility. In so doing, the Court has reviewed all relevant information obtainable by it, including the guidelines for approving fees in a somewhat different context set forth in the opinions of the Court of Appeals for this Circuit in Farmington Dowel Products v. Forster Mfg. Co., 421 F.2d 61 (1st Cir., 1970) and 436 F.2d 699 (1st Cir., 1970); in Judge Gignoux' opinion in Farmington Dowel Products v. Forster Mfg. Co., 297 F.Supp. 924 (D. Maine, 1969); and in Judge Fullham's opinion in Philadelphia Electric Co. v. Anaconda American Brass Co., 47 F.R.D. 557 (E.D.Pa.1969). The Court has considered the highly competent and economical manner in which this fund was administered by the Special Master, his ability and standing at the bar, the time and effort expended by the Special Master, the number and complexity of the claims passed upon, the difficulty of many of the decisions necessarily made by the Special Master, and the fact that attorneys in the large Boston law firms discharging responsibilities frequently not more onerous than that discharged herein bill clients at rates falling between $60 and $100 per hour. Cf. Affidavit filed on July 18, 1973 in Rose Moses et al. v. C. Rodgers Burgin et al., Civil Action No. 67–880–C.

■ The Court also has in mind that in class actions in federal courts fees for counsel in the order of 20 to 25 per cent are not unusual. Consequently, it finds and rules that in the instant case a fee in the total amount of $75,000, constituting approximately 2.8 per cent of the fund administered by the Special Master, is fair, reasonable and adequate compensation for his services and is not unfair to the class members.

Accordingly, the application by the Special Master for a total fee of $75,000 is approved, as is his application for disbursements to the National Shawmut Bank for its total compensation in the amount of $41,989.

Finally, the application of the Special Master in paragraph 14 of his Third Interim Report is approved and confirmed as to each of the subparagraphs thereof marked 14(a) through 14(e).